Bryan H. Heckenlively (State Bar No. 279140)
Bryan.Heckenlively@mto.com
Aditi N. Ghatlia (State Bar No. 347260)
Aditi.Ghatlia@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:   (415) 512-4077

Carl Jiang (State Bar No. 355258)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ELI SCHECHTER and TALYA MALKA, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CHAPMAN UNIVERSITY, THE BOARD OF TRUSTEES OF CHAPMAN UNIVERSITY, and DOES 1-50,<br><br>        Defendants. | Case No. 8:25-cv-2426<br><br>**MOTION TO DISMISS COMPLAINT**<br><br>*Filed concurrently with Declaration of Bryan H. Heckenlively and [Proposed] Order*<br><br>Date:  March 16, 2026<br>Time: 1:30 p.m.<br>Judge:  Hon. Mónica Ramírez Almadani<br>Courtroom:  9B<br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    PLAINTIFFS' ALLEGATIONS ........................................................ 3

III.   LEGAL STANDARD ....................................................................... 6

IV.    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED UNDER RULE 12(B)(1) ........................................... 6

V.     ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) ................................................................... 7

    A.     Plaintiffs Fail to State a Claim Under Title VI ....................... 7

       1.     Protected Political Speech Is Not Actionable Under Title VI ................................................................... 7

       2.     Plaintiffs Fail to State a Hostile Environment Claim ............... 10

          (a)     Plaintiffs Do Not Allege Chapman Was Deliberately Indifferent to Harassment ........................... 10

       3.     Plaintiffs Fail to State a Direct Discrimination Claim Under Title VI ................................................................ 13

          (a)     Plaintiffs Do Not Allege Direct Evidence of Discrimination by Chapman ........................................... 14

          (b)     Plaintiffs Do Not Allege Circumstantial Evidence of Discrimination. ................................................. 15

    B.     Plaintiffs Fail to State a Claim Under Section 1981 ............. 17

    C.     Plaintiffs Fail to State a Claim Under California Education Code § 220 ......................................................................... 18

    D.     Plaintiffs' Class Allegations Should be Dismissed ............... 18

VI.    CONCLUSION ................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aifang Shi v. Cent. Arizona Coll.*,
   No. CV-07-1147-PHX-SRB, 2008 WL 11395569 (D. Ariz. Dec. 3, 2008) ...............................................................................................................18

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)........................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................6

*Barnes v. Gorman*,
   536 U.S. 181 (2002)..................................................................................7, 15

*Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*,
   420 U.S. 128 (1975)........................................................................................6

*Boyle v. Madigan*,
   492 F.2d 1180 (9th Cir. 1974)......................................................................19

*Chuang v. Univ. of Cal. Davis*,
   225 F.3d 1115 (9th Cir. 2000).......................................................................14

*Comcast Corp. v. NAAAOM*,
   589 U.S. 327 (2020)......................................................................................17

*Cordova v. State Farm Ins. Companies*,
   124 F.3d 1145 (9th Cir. 1997).......................................................................14

*D.C. v. Pittsburgh Pub. Sch.*,
   415 F. Supp. 3d 636 (W.D. Pa. 2019) ..........................................................15

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)........................................................................... 10, 12, 13

*Doe v. Madison Sch. Dist. No. 321*,
   177 F.3d 789 (9th Cir. 1999)...........................................................................6

*Dominguez-Curry v. Nev. Transp. Dep't*,
   424 F.3d 1027 (9th Cir. 2005).......................................................................14

*Felber v. Yudof*,
851 F. Supp. 2d 1182 (N.D. Cal. 2011)......................................................8, 11, 18

*Garcia v. Hernandez*,
No. SACV2300946, 2023 WL 6531569 (C.D. Cal. Sept. 19, 2023)...................17

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003).............................................................................16

*Landau v. Corp. of Haverford Coll.*,
780 F. Supp. 3d 548 (E.D. Pa. 2025)....................................................................9

*Landau v. Corp. of Haverford Coll.*,
789 F. Supp. 3d 401 (E.D. Pa. 2025).............................................................11, 18

*Mandel v. Bd. of Trs. of Cal. State Univ.*,
No. 17-CV-03511-WHO, 2018 WL 5458739 (N.D. Cal. Oct. 29, 2018) ......................................................................................................14, 16

*Marca v. Capella Univ.*,
No. SACV 05-642, 2007 WL 9705859 (C.D. Cal. Dec. 13, 2007) .......................9

*Opara v. Yellen*,
57 F.4th 709 (9th Cir. 2023).........................................................................14, 15

*Pridgen v. Church & Dwight Co.*,
No. SACV191683, 2020 WL 2510517 (C.D. Cal. Mar. 2, 2020) .........................7

*Rashdan v. Geissberger*,
No. C 10-00634-SBA, 2012 WL 1965863 (N.D. Cal. May 31, 2012)................15

*Rashdan v. Geissberger*,
764 F.3d 1179 (9th Cir. 2014)...............................................................14, 15, 16

*Rosenfeld v. Talamantes*,
No. CV 22-0497 DSF, 2022 WL 2903144 (C.D. Cal. May 23, 2022) ................18

*Schiff v. Barrett*,
No. C-10-1051, 2010 WL 2803037 (N.D. Cal. July 14, 2010) ..........................17

*Snyder v. Phelps*,
562 U.S. 443 (2011)..............................................................................................8

*Son Hong v. Mary Read*,
No. 8:19-CV-00086, 2020 WL 7344828 (C.D. Cal. Oct. 26, 2020),
*report and recommendation adopted sub nom. Hong v. Read*,
No. 8:19-CV-00086-RGK-JC, 2020 WL 7488913
(C.D. Cal. Dec. 18, 2020) ...................................................................................16

*Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*
158 F.4th 1 (1st Cir. 2025).............................................................................*passim*

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012)..............................................................................6

*Walsh v. Tehachapi Unified Sch. Dist.*,
827 F. Supp. 2d 1107 (E.D. Cal. 2011) ...............................................................18

*Yu v. Idaho State Univ.*,
15 F.4th 1236 (9th Cir. 2021).................................................................................7

**STATE CASES**

*Donovan v. Poway Unified Sch. Dist.*,
167 Cal. App. 4th 567 (2008)..............................................................................18

**FEDERAL STATUTES**

42 U.S.C. § 1981............................................................................... 1, 2, 17, 18

42 U.S.C. § 2000d *et seq.*
Title VI of the 1964 Civil Rights Act ...........................................................*passim*

Title VII..............................................................................................................15

Title IX ........................................................................................................ 10, 18

**STATE STATUTES**

Cal. Educ. Code § 220 ...................................................................................1, 18

Cal. Educ. Code § 94367 ......................................................................................9

**RULES - OTHER**

Fed. R. Civ. P. 12(b)(1).......................................................................................1, 6

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 6, 7

Fed. R. Civ. P. 23 ...................................................................................................... 19

Local Rule 7-3 ............................................................................................................. 1

**CONSTITUTIONAL PROVISIONS**

U.S. Const., amend. I ........................................................................... 2, 7, 8, 9

MOTION TO DISMISS COMPLAINT

Case No. 8:25-cv-2426

**PLEASE TAKE NOTICE** that on March 16, 2026, before the Honorable Monica Ramirez Almadani in Courtroom 9B, Defendants will and hereby do move for an order dismissing Plaintiffs' Complaint with prejudice.  This Motion is based on the Notice of Motion and Memorandum of Points and Authorities, all papers on file, and any authority or argument presented in the reply and at any hearing.

Prior to filing this Motion, Defendants' counsel emailed Plaintiffs' counsel on December 10, 2025, to request a conference of counsel pursuant to Local Rule 7-3 and Hon. Mónica Ramírez Almadani's requirements.  *See* Heckenlively Decl.  On December 16, 2025, Defendants' counsel met and conferred via videoconference with Plaintiffs' counsel to discuss the basis for this Motion.  *Id.*  The parties did not resolve the issues presented in the Motion.  *Id.*

<b><u>STATEMENT OF RELIEF SOUGHT</u></b>

Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

## I.    INTRODUCTION

Plaintiffs' Complaint seeks to transform a year of contentious campus activism regarding the Israel–Gaza conflict into federal civil rights liability against Chapman University.  Chapman is deeply committed to protecting its students from harassment, discrimination, and acts of antisemitism.  But neither Title VI, Section 1981, nor California Education Code § 220 makes universities automatically responsible for the expressive activities of students or for every instance of abhorrent peer conflict.  Rather, Chapman may be held liable only if it intentionally discriminated against Plaintiffs or responded to student misconduct with "deliberate indifference" that was clearly unreasonable in light of known circumstances.  Plaintiffs have not alleged facts that would support either conclusion—and there are no such facts.

To the contrary, Plaintiffs' own allegations show that when Chapman administrators learned of potentially antisemitic actions on campus during the 2023-2024 school year, they met with involved students, facilitated dialogue, investigated the alleged incidents, conducted a threat assessment, consulted campus Public Safety, managed competing safety and expressive-rights considerations, and repeatedly explained applicable campus policies to students. Plaintiffs identify no facts plausibly suggesting that Chapman acted with discriminatory animus or responded to reported incidents in a manner that could meet the stringent deliberate indifference standard.

Moreover, the vast majority of conduct Plaintiffs identify as "harassment" consisted of student political speech (e.g., protest messaging and sidewalk chalking) concerning matters of public debate and thus protected by the First Amendment—even though it was offensive to many. Federal civil rights statutes cannot be construed to force Chapman to impinge on these constitutional rights. And regardless, California's Leonard Law prohibits private universities like Chapman from disciplining students for such speech, just as if they were public entities covered by the First Amendment.

Plaintiffs' claims for prospective injunctive and declaratory relief also fail for an independent reason: both Plaintiffs graduated in 2024 and are no longer subject to the campus conditions they challenge. Their requests for forward-looking relief are moot.

Even taking the allegations as true, as required for a motion to dismiss, the Complaint therefore does not state a claim under Title VI, Section 1981, or state law. The Complaint should be dismissed in its entirety.

## II. PLAINTIFFS' ALLEGATIONS

Chapman University is a private, nonprofit institution located in Orange, California.[1]  Compl. ¶ 5.  Plaintiffs Eli Schechter and Tayla Malka are two former Chapman students who graduated in 2024.  *Id.* ¶¶ 3-4.  Their allegations focus on a number of campus events and incidents during the 2023-2024 academic year, following Hamas' October 7 attack on Israel:

***Student Protests and Chalking.***  After October 7, 2023, Jewish student groups erected a memorial for victims of the attacks in Israel.  *Id.* ¶ 15.  In response to concerns regarding possible "anti-Israel flyers" on light poles near the memorial, Dean of Students Jerry Price stated that these flyers would not be allowed to hang on the light poles at the center of the memorial.  *Id.* ¶ 21.  However, so long as the flyers complied with school policies, the flyers would be allowed on other light poles in the area.  *Id.*

Plaintiffs also allege that throughout the school year, students held protests on campus against Israel's actions in Gaza during which they chanted statements such as "globalize the Intifada" and held signs which stated, "there is only one solution Intifada Revolution," and "from the river to the sea."  *Id.* ¶ 41-42, 50.  Plaintiffs allege that on certain occasions, the protests were loud enough to be heard in classrooms.  *Id.* ¶ 38.  In April, 2024, Dean Price sent a campus-wide email acknowledging that the protestors were complying with university policies.  *Id.* ¶ 43.

Plaintiffs allege that students chalked language such as "globalize the Intifada" on sidewalks around campus.  *Id.*  ¶¶ 41-43, 45.  They also allege that this type of chalking also took place during the following school year, following Plaintiffs' graduation.  *Id.* ¶ 53.

---

[1] Plaintiffs have also sued Chapman's Board of Trustees, but that is not a distinct legal entity from Chapman University.  The Board of Trustees should be dismissed from the action with prejudice, even if Chapman is allowed to remain in the case.

***October 30, 2023 SJP Teach-In.*** On October 30, the student organization Students for Justice in Palestine ("SJP") hosted a "teach-in" event on campus. *Id.* ¶¶ 24-25. Plaintiffs allege that certain students, including Plaintiff Schechter, attempted to attend the teach-in but were denied entry because the student organization limited participation to those students aligned with its political mission. *Id.* ¶¶ 25-28. While some Jewish students were invited to attend, Plaintiffs allege that other Jewish students (or students with "Jewish sounding last names") were denied entry because of their belief in Zionism. *Id.* ¶¶ 26-27. Plaintiff Schechter complained about this perceived policy to Dean Price, who in response explained "it is reasonable for SJP-Chapman to limit its membership to students who support its mission." *Id.* ¶ 26. Plaintiff Schechter and others attempted to enter the event but were allegedly barred from entering. *Id.* ¶ 28.

***Allegations of Individual Misconduct.*** Plaintiffs identify incidents of alleged peer-to-peer harassment during two distinct periods of time: October through November, 2023, and April through May, 2024.

*First,* Plaintiffs allege that certain students removed or altered components of the October 7 memorial, including by ripping Israeli flags from the ground, and that Plaintiff Schechter reported these incidents to Dean Price. *Id.* ¶¶ 15, 22. Plaintiffs allege administrators communicated with Plaintiffs about concerns regarding the memorial. *Id.* ¶¶ 20-23.

Plaintiffs allege that on or about October 9, 2023, a student yelled "Fuck Jews" to a group of Jewish students. *Id.* ¶ 16. In response, Plaintiffs allege that Dean Price convened a meeting with the offending student and a group of Jewish students, including Plaintiff Schechter. *Id.* Plaintiffs allege that the school took disciplinary action against the offending student for his statement. *Id.*

Plaintiffs allege that at some point prior to October 26, 2023, Dean Price "was unwilling to publicly identify Hamas as a terrorist organization." *Id.* ¶ 23.

They also allege that on November 12,[2] a student made a death threat to Plaintiff Malka over Instagram. *Id.* ¶ 29. Plaintiff Malka reported this threat, and Chapman conducted a threat assessment on the student. *Id.* ¶¶ 29-31. Then-President Daniele Struppa told colleagues that the student's message "'crossed the line'" and seemingly was "'not protected speech.'" *Id.* ¶ 29. Plaintiffs allege on "information and belief" (and nothing more) that Chapman did not discipline the student "due to Diversity, Equity, and Inclusion ('DEI') policies whereby Arabs and Muslims received preferential treatment in disciplinary matters." *Id.* ¶ 30.

*Second,* the Complaint alleges that in April and May, 2024, SJP began a "targeted campaign of ripping down flyers posted by Jewish student groups and replacing them with anti-Israel flyers," and that Plaintiff Schechter informed Dean Price about this campaign on multiple instances. *Id.* ¶¶ 22, 35, 38-40, 44. These allegations include identifying an SJP student "accomplice" who "upon information and belief" (and nothing more) was never disciplined. *Id.* ¶ 44. In response, Dean Price proposed a new poster policy. *Id.* ¶ 40. Plaintiffs also allege that in at least one instance, Chapman Public Safety officials investigated the alleged campaign to remove signs and that video footage reflected an "older male, presumably not a student" removing the posters. *Id.* ¶ 39.

Plaintiffs allege that on April 18, 2024, faculty member Lisa Leitz—a "formal or informal SJP faculty advisor"—confronted Plaintiff Schechter as he was hanging posters on campus and "screamed" that he did not have the authority to do so. *Id.* ¶ 37. In response, Chapman "acknowledg[ed] she broke understood university protocol." *Id.*

---

[2] The complaint alleges this occurred on November 12, 2024, but Plaintiffs presumably meant to refer to November 12, 2023, because they had graduated by November 2024.

MOTION TO DISMISS COMPLAINT

Plaintiffs next allege that in April, 2024, a student "targeted" Plaintiff Schechter with "unwanted homosexual innuendo" when he told Schechter he loved him and made a "kissy face" towards him. *Id.* ¶ 36. The same student also allegedly "gestured a Nazi salute" towards Plaintiff Schechter. *Id.* ¶ 41.

Plaintiffs allege that in May, 2024, Plaintiff Malka discovered a dead, bloody squirrel outside of her residence. *Id.* ¶ 49.

***The May 2024 Encampment.*** Plaintiffs allege that on May 2, 2024, students established an on-campus encampment to protest Israel's military actions in Gaza. *Id.* ¶¶ 46-52. They claim the encampment used a "registration procedure" to exclude those with a belief in Zionism, and that Chapman "approved" of the encampment and this procedure by acknowledging both in a campus-wide communication. *Id.* ¶ 48.

## III.   LEGAL STANDARD

Rule 12(b)(6) requires sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The same is true for a facial Rule 12(b)(1) motion. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

## IV.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED UNDER RULE 12(B)(1)

Federal courts lack jurisdiction over claims for injunctive or declaratory relief when the alleged injury no longer exists or the plaintiffs are no longer subject to the challenged conditions. *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999). Here, Plaintiffs graduated from Chapman in 2024. Compl. ¶¶ 3-4. Their graduation moots their requests for prospective injunctive or declaratory relief. *See id.*; *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129 (1975). Because Plaintiffs are no longer enrolled students and face no realistic

prospect of future harm from the policies or conditions they challenge, their claims for equitable relief are moot and should be dismissed.[3]

## V.   ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6)

### A.   Plaintiffs Fail to State a Claim Under Title VI

Title VI of the 1964 Civil Rights Act provides that, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Under Title VI, a university can be held liable only for "intentional conduct." *Barnes v. Gorman*, 536 U.S. 181, 187 (2002); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (Title VI's "§ 601 prohibits only intentional discrimination."); *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021) ("Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove intentional discrimination.").  But Plaintiffs' Complaint does not include any nonconclusory allegations of intentional conduct by Chapman based on any protected characteristic.  Specifically, Plaintiffs have failed to state a Title VI claim because: (1) the complaint alleges speech and politically motivated conduct protected by the First Amendment; (2) Plaintiffs do not allege that Chapman was deliberately indifferent to a hostile environment; and (3) Plaintiffs do not allege that Chapman directly discriminated against them.

#### 1.   Protected Political Speech Is Not Actionable Under Title VI

Plaintiffs' Complaint focuses in large part on the campus protests against

---

[3] Because Plaintiffs themselves do not have standing, they cannot represent a class seeking injunctive relief. *Pridgen v. Church & Dwight Co.*, No. SACV191683, 2020 WL 2510517, at *5 (C.D. Cal. Mar. 2, 2020) ("If none of the class representatives can establish standing, then they may not seek relief in federal court, either for themselves or on behalf of the class.").  The Court should dismiss Plaintiffs' class allegations to the extent Plaintiffs request classwide prospective injunctive relief.  Compl. ¶¶ 54-63.

Israel's actions in Gaza, where students allegedly shouted statements such as "globalize the Intifada," held signs displaying similar statements, and chalked similar language onto sidewalks across campus. Compl ¶¶ 38, 41-44. Such speech—reflecting the ongoing national debate on a topic of international news—is squarely protected by the First Amendment. *See Snyder v. Phelps*, 562 U.S. 443, 454 (2011) (signs bearing messages such as "Thank God for Dead Soldiers," "Pope in Hell," "Priests Rape Boys," "You're Going to Hell," which "may fall short of refined social or political commentary," are nonetheless entitled to First Amendment protection). While many understandably found this speech offensive or disturbing, Title VI does not require a university to silence protected expression to shield those who object to its content. *See Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011).

Courts across the country have dismissed Title VI claims based on similar considerations of constitutionally protected speech. For example, in *Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, the First Circuit held that Title VI did not require MIT to "quash" student speech on "matters of public concern," including slogans such as "Palestine will be free, from the river to the sea!" and "There is only one solution! Intifada revolution!" 158 F.4th 1, 6, 12-13 (1st Cir. 2025). Instead, the court rejected the plaintiffs' attempt to "[u]s[e] Title VI to compel adherence to a preferred political viewpoint." *Id.* at 13. And in *Felber*, the court similarly dismissed a Title VI suit against a university, holding that protestors' use of "signs and publications that are critical of Israel and supportive of Hamas and Hezbollah" was activity protected by the First Amendment. 851 F. Supp. 2d at 1185, 1188.

Plaintiffs may argue that the First Amendment is not relevant here because Chapman is a private university, not a state actor. That argument misses the point for two reasons. *First*, as the First Circuit recognized in *Stand With Us*, it cannot be the case that Title VI means one thing for public schools and something else entirely

for private schools.  *See Stand With US Ctr. for Legal Just.*, 158 F.4th at 13-15.  In no setting does Title VI *require* a college or university to take actions that would be prohibited by the First Amendment at a public institution—even if a private college might have the option to take that action.  *Second*, California's Leonard Law prohibits private universities in California from "disciplining a student for engaging in speech that would be protected by the First Amendment if it occurred off campus."  *Marca v. Capella Univ.*, No. SACV 05-642, 2007 WL 9705859, at *22 (C.D. Cal. Dec. 13, 2007); Cal. Educ. Code § 94367.  Thus, Chapman has neither the obligation nor the option to punish protected speech.

Plaintiffs cannot transform political speech into unprotected speech by characterizing it as anti-Zionist, even if they and others associate Zionism with their identity as Jews.  While "Plaintiffs are entitled to their own interpretive lens equating anti-Zionism (as they define it) and antisemitism . . . it is another matter altogether to insist that others must be bound by plaintiffs' view."  *Stand With US Ctr. for Legal Just.,* 158 F.4th 1 at 16-17.  One must look no further than the recent news headlines to understand that the "relationship between anti-Zionism and antisemitism" is being actively debated at this very moment and should be resolved "through discourse, not judicial fiat."  *Id.* at 17.  Thus, as the First Circuit recognized, while anti-Zionism may, in certain circumstances, be "wielded as a tool of the antisemite," there must be factual allegations that "permit the inference that in these specific circumstances the protestors' strident criticisms of Israel were driven by antisemitism.  Without such an inference, the protestors' speech cannot constitute racial harassment for Title VI purposes."  *Id.* at 18; *see also Landau v. Corp. of Haverford Coll.*, 780 F. Supp. 3d 548, 555 (E.D. Pa. 2025) ("*Landau I*") (where plaintiffs sought to "link Judaism to Zionism" the court rejected "[p]laintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views").

Here too, Plaintiffs do not allege facts that provide a basis for concluding that the alleged anti-Zionist speech was driven by—or, put another way, a pretext for—antisemitism. They instead equate any anti-Zionist speech with antisemitism and ask the Court to accept that as sufficient to state a claim. Title VI, however, does not support that theory.

### 2. Plaintiffs Fail to State a Hostile Environment Claim

Plaintiffs' remaining allegations do not state a hostile environment claim under Title VI because Plaintiffs do not allege that Chapman was deliberately indifferent to "severe, pervasive, and objectively offensive" harassment that deprived Plaintiffs of the benefit of their educational experience. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999) (analyzing a hostile environment claim under the analogous Title IX standard).

#### (a) Plaintiffs Do Not Allege Chapman Was Deliberately Indifferent to Harassment

Plaintiffs' Title VI harassment claim fails because Plaintiffs have not alleged deliberate indifference—which is a critical prerequisite to liability. *Id.* at 648. A school is deliberately indifferent only if its response is "clearly unreasonable in light of the known circumstances." *Id.* The standard is "not a mere 'reasonableness'" test. *Id.* at 648-49 (citation omitted). It does not require universities to purge all harassment, nor to impose particular forms of discipline. *Id.* at 648-49. The deliberate indifference standard involves a holistic inquiry that focuses on the university's response as a whole, not on whether the institution addressed every alleged incident in the precise manner or with the particular remedy a plaintiff later demands. Indeed, it would be "entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." *Id.* at 649. Universities have many other options for responding to harassment on campus to satisfy Title VI, including denouncing the harassment,

expressing university values, and providing support to affected students.  *See* Dear Colleague Letter, Dep't of Educ., Office for Civil Rights (May 7, 2024).

Where, as here, administrators use those tools, courts routinely reject deliberate indifference claims.  In *Felber*, for example, the court found no deliberate indifference where the administration "engaged in an ongoing dialogue with the opposing parties in an attempt to ensure that the rights of all persons are respected, and to minimize the potential for violence and unsafe conditions."  851 F. Supp. 2d at 1188.  Similarly, in *Stand With US*, the First Circuit held that MIT was not deliberately indifferent when it, among other actions, "met with 'leaders of the Jewish community'" and took disciplinary action against students who participated in violent protests on campus.  158 F.4th at 22-23.  And in *Landau v. Corp. of Haverford Coll.,* the court found no deliberate indifference where the university "listened and responded to the prospective student's concerns and encouraged him to seek recourse through an established mechanism."  789 F. Supp. 3d 401, 419 (E.D. Pa. 2025) ("*Landau II*").  Chapman's response here is at least as robust as in those cases.  The Complaint itself acknowledges that Chapman took a variety of steps to address Plaintiffs' complaints of harassment and discrimination and to improve the environment for Jewish students on campus:

***Threat Review and Disciplinary Action***.  Plaintiffs allege that when Chapman learned of a threat to Plaintiff Malka made by another student, it conducted a risk assessment of that student.  Compl. ¶ 31.  Chapman also disciplined a student responsible for stealing Israeli flags from an Israeli hostage memorial and a student who yelled "Fuck Jews" to a group of Jewish students.  *Id.* ¶¶ 16, 22.  Dean Price also convened a meeting between Plaintiff Schechter and a student protestor who had made offensive statements to improve dialogue.  *Id.* ¶ 16.

***Communications***.  The Complaint alleges that Dean Price and President Struppa were repeatedly informed of Plaintiffs' concerns and each of them responded.  Dean Price exchanged frequent emails with Plaintiff Schechter

throughout the academic year, addressing memorial desecration, protest activity, and flyer disputes. *Id.* ¶¶ 15, 18, 20, 35, 38-44. President Struppa likewise responded when Plaintiff Malka reported the November threat, telling colleagues that the student's message "'crossed the line'" and seemingly was "'not protected speech.'" *Id.* ¶ 29.

Chapman leadership also issued campus-wide communications explaining the University's efforts to balance safety with expressive rights and advising the community that SJP's demonstrations were, at the time, complying "with applicable University policies." *Id.* ¶ 43.

***Protest Regulations.*** Chapman consistently applied neutral time, place, and manner policies to student protests and demonstrations. For example, Chapman prohibited anti-Israel flyers from being posted on the light pole directly within the October 7 memorial site out of respect for the memorial's integrity, while permitting such flyers on other poles that complied with standard posting rules. *Id.* ¶ 21.

***Investigation.*** The Complaint acknowledges that Public Safety investigated who was "ripping down pro-Israel flyers" and found that the culprit, on at least one occasion, was an "older male, presumably not a student." *Id.* ¶ 39. Campus administration proposed revisions to the posting rules to curb the problem, an effort Plaintiff Schechter opposed. *Id.* ¶ 40.

***Individual Student Misconduct.*** Plaintiffs' allegations concerning individual student misconduct likewise do not establish deliberate indifference. Plaintiffs allege that a student directed "unwanted homosexual innuendo" toward Plaintiff Schechter and, on a separate occasion, gestured a Nazi salute toward Schechter and another Jewish student during an SJP-organized event, and further allege the student was not disciplined. Compl. ¶¶ 36, 41. But the absence of the particular response Plaintiffs thought appropriate does not itself render Chapman's response "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. The Complaint does not allege repeated misconduct after the reports, ongoing

harassment ignored by the University, or any resulting deprivation of educational opportunities.

***Acknowledgment Regarding Faculty Member***.  Plaintiffs also reference a brief exchange between Plaintiff Schechter and faculty member Lisa Leitz, described as a "formal or informal SJP faculty advisor."  Compl. ¶ 37.  Plaintiffs allege that Professor Leitz confronted Schechter about posting flyers and that Chapman "acknowledg[ed] she broke understood university protocol."  *Id.*  That allegation undermines any claim of deliberate indifference: it indicates Chapman reviewed the incident, determined it violated protocol, and addressed it.  *See Stand With Us Ctr. for Legal Just.*, 158 F.4th at 23 ("Title VI does not require schools to 'craft perfect solutions.'" (citation omitted)).  Plaintiffs do not allege that the encounter was repeated, escalated, or ignored, nor do they allege any educational impact flowing from it.  A promptly acknowledged, one-time protocol breach cannot plausibly constitute a response that was "clearly unreasonable."  *Davis*, 526 U.S. at 648.

While some "[f]air-minded persons might question whether [Chapman] acted quickly and decisively enough. . . . [others] might be sympathetic to a university's concern that it not counterproductively aggravate the situation."  *Stand With US Ctr. for Legal Just.*, 158 F.4th at 23.  Plaintiffs' disagreement with the precise contours of Chapman's response to their complaints does not convert that response into deliberate indifference.  To the contrary, the allegations in the Complaint demonstrate conclusively that Chapman's actions were not "clearly unreasonable."  That is fatal to Plaintiffs' harassment theory.

### 3.    Plaintiffs Fail to State a Direct Discrimination Claim Under Title VI

Plaintiffs' separate theory of liability under Title VI, that Chapman directly discriminated against Plaintiffs on the basis of their Jewish identity, fails as well.  To state a claim for direct discrimination under Title VI, plaintiffs must "plead facts

-13-

Case No. 8:25-cv-2426

MOTION TO DISMISS COMPLAINT

demonstrating that (1) they are part of a protected class, (2) they were treated differently from similarly situated individuals, and (3) this treatment was motivated by their protected status." *Mandel v. Bd. of Trs. of Cal. State Univ.*, No. 17-CV-03511-WHO, 2018 WL 5458739, at *20 (N.D. Cal. Oct. 29, 2018) (citation and internal quotation marks omitted). The allegations here do not satisfy these elements under either a direct evidence or circumstantial evidence approach.

### (a)   Plaintiffs Do Not Allege Direct Evidence of Discrimination by Chapman.

Plaintiffs allege no facts that would constitute direct evidence of discrimination. "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) (citation and internal quotation marks omitted).[4] Here, Plaintiffs identify no racial epithet or race-specific remark by any Chapman official. *See Rashdan v. Geissberger,* 764 F.3d 1179, 1183 (9th Cir. 2014) (no direct evidence of discriminatory animus when the plaintiff, an Egyptian dentist, alleged that professors had referenced her practice as "Third World" but acknowledged "no one affiliated with the University made any disparaging comment about Egypt or its people, customs, culture, religious practices, or traditions").

Plaintiffs may point to Professor Leitz's comments as evidence of animus. Compl. ¶ 37. But they do not allege that Leitz had a leadership role or otherwise could be responsible for any alleged direct discrimination by Chapman. *See Opara*

---

[4] For example, in *Chuang v. Univ. of Cal. Davis*, the court held that plaintiffs had alleged direct evidence when they alleged a state university official with decision-making powers stated "'two Chinks' in the pharmacology department were more than enough," and the dean laughed in response. 225 F.3d 1115, 1121, 1128 (9th Cir. 2000); *see also Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (direct evidence of discrimination where agency manager with decision-making powers stated that plaintiff was a "dumb Mexican").

*v. Yellen,* 57 F.4th 709 (9th Cir. 2023) (defining direct evidence under Title VII as evidence of "conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude" (citation and internal quotation marks omitted)). Here, they fail to allege that Leitz's comments reflected official Chapman policy or were motivated by Plaintiffs' Jewish identity.

> **(b)    *Plaintiffs Do Not Allege Circumstantial Evidence of Discrimination.***

Plaintiffs also fail to plead circumstantial evidence of animus. Circumstantial evidence requires facts suggesting that "similarly-situated" non-Jewish students were treated more favorably or that officials acted because of bias. *Rashdan v. Geissberger*, No. C 10-00634-SBA, 2012 WL 1965863, at *10 (N.D. Cal. May 31, 2012), *aff'd*, 764 F.3d 1179 (9th Cir. 2014). Plaintiffs allege neither.

To begin, Plaintiffs allege that Dean Price denied certain individuals, including Plaintiff Schechter, access to an SJP teach-in. Compl. ¶¶ 25-28. But the Complaint itself establishes that other Jewish students attended the event and that access criteria turned on belief in Zionism, not Jewish identity. *Id.* ¶ 26. Dean Price applied a neutral policy that allowed SJP to structure programming around its mission but did not exclude individuals on the basis of their race, religion, or national origin (as opposed to their views regarding Zionism). *Id.* Moreover, Title VI requires intentionally discriminatory conduct. *Barnes*, 536 U.S. at 186-87. And here, Plaintiffs have not alleged that Dean Price acted "because of" a desire to treat Jewish students differently, as opposed to a desire to maintain order by allowing student groups to limit their event audiences to those who supported their messages. *D.C. v. Pittsburgh Pub. Sch.,* 415 F. Supp. 3d 636, 658-59 (W.D. Pa. 2019).

Plaintiffs further allege (incorrectly) that Chapman "approved" the registration policy adopted by the organizers of the encampment in 2024. But their allegations do not support that conclusion. Specifically, the Complaint points to an

-15-

email from Dean Price in which he acknowledges the registration procedures of the encampment. Compl. ¶ 48. But the email merely acknowledges the encampment's internal procedures; it does not adopt or enforce them. *See Mandel*, 2018 WL 5458739, at *21-24 (rejecting Title VI claim where officials tolerated protests without discriminatory motive).[5]

Plaintiffs also allege that Dean Price's alleged failure to denounce Hamas as a terrorist organization is circumstantial evidence of discrimination. Compl. ¶ 23. But Plaintiffs do not explain how the alleged failure to denounce Hamas can be used to show that other, similarly situated students, were treated differently from Plaintiffs themselves. *Rashdan,* 764 F.3d at 1183. Additionally, Plaintiffs do not allege when this alleged failure occurred or any other surrounding facts—as would be necessary to draw a conclusion that Dean Price acted with discriminatory animus. This court need not accept "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

Finally, Plaintiffs make barebones allegations that, "upon information and belief," Chapman maintained a "DEI" policy "whereby Arabs and Muslims received preferential treatment in disciplinary matters" and Chapman refused to discipline an SJP student "accomplice" that "ripp[ed] down pro-Israel flyers." Compl. ¶¶ 30, 44. But "pleading on information and belief, without more, is insufficient to survive a

---

[5] There are also no facts alleged that the encampment even had an entrance policy dictated by animus towards any protected class. Instead, the Complaint acknowledges that students were denied access to the encampment based on their support for Zionism. *Id.* ¶ 46 (alleging that students who held a belief in Zionism were barred from entering the encampment). Because these allegations are not "based on race or national origin," they cannot support a Title VI hostile environment claim. *Son Hong v. Mary Read*, No. 8:19-CV-00086, 2020 WL 7344828, at *22 (C.D. Cal. Oct. 26, 2020), *report and recommendation adopted sub nom. Hong v. Read*, No. 8:19-CV-00086-RGK-JC, 2020 WL 7488913 (C.D. Cal. Dec. 18, 2020).

motion to dismiss for failure to state a claim." *Garcia v. Hernandez*, No. SACV2300946, 2023 WL 6531569, at *3 (C.D. Cal. Sept. 19, 2023) (citation and internal quotation marks omitted). And here, Plaintiffs have alleged no more to support their allegation of such a discriminatory policy, nor have they alleged that they or other Jewish students were harmed by the allegedly biased policy.

Because Plaintiffs do not plausibly allege either direct or circumstantial evidence of discriminatory intent, their direct-discrimination theory fails as a matter of law.

**B.      Plaintiffs Fail to State a Claim Under Section 1981**

Plaintiffs' Section 1981 claim also fails as a matter of law. Section 1981 prohibits racial discrimination in "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981(a). To state a claim, a plaintiff must allege intentional race discrimination interfering with a contractual relationship. *Comcast Corp. v. NAAAOM*, 589 U.S. 327, 331 (2020).

Plaintiffs do not identify any specific contract with Chapman that was impaired or denied because of their race. They do not allege that Chapman altered tuition, revoked enrollment, withheld academic services, or otherwise changed the terms of the student-university relationship on account of their Jewish identity. *Schiff v. Barrett*, No. C-10-1051, 2010 WL 2803037, at *4 (N.D. Cal. July 14, 2010) (no Section 1981 claim where plaintiffs did not allege defendants' discrimination impaired a contractual relationship).

Instead, Plaintiffs repurpose the same campus-climate allegations underlying their Title VI claim. But—even apart from the failure to identify a specific contract that was impaired—these allegations cannot establish a Section 1981 claim for the same reason they cannot establish a Title VI claim: they do not plausibly show intentional discrimination. Because Plaintiffs have "failed to establish a prima facie case of discrimination under Title VI," "the same analysis precludes [their] claim

under § 1981." *Aifang Shi v. Cent. Arizona Coll.,* No. CV-07-1147-PHX-SRB, 2008 WL 11395569, at *10, 12 (D. Ariz. Dec. 3, 2008).

**C.     Plaintiffs Fail to State a Claim Under California Education Code § 220**

Plaintiffs' state law claim fails as well.  Section 220 of the Education Code prohibits discrimination in state-funded education programs on grounds including race, nationality, and religion.  Cal Educ. Code § 220.  Courts analyze § 220 claims under the same framework as Title IX and Title VI claims: plaintiff must allege (1) severe and pervasive harassment; (2) actual knowledge; and (3) deliberate indifference.  *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1124 (E.D. Cal. 2011); *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 581 (2008) ("We conclude the Legislature intended Title IX's elements to govern an action under section 220."); *Stand With US Ctr. for Legal Just.*, 158 F.4th at 11 ("[T]he standards for sexual harassment under Title IX and racial harassment under Title VI are often treated as harmonious.").  And, as a result, Plaintiffs' section 220 claim fails for the same reason as their Title VI claim.  Plaintiffs allege no deliberate indifference.  Rather, as discussed above, the Complaint lays out that Chapman responded to reports, engaged with students, and attempted to balance safety and expressive rights consistent with applicable law.  *Felber*, 851 F. Supp. 2d at 1188; *Landau II*, 789 F. Supp. 3d at 417.

**D.     Plaintiffs' Class Allegations Should be Dismissed**

Because Plaintiffs fail to state any individual claim for relief, their class allegations, Compl ¶¶ 54-63, should also be dismissed.  *Rosenfeld v. Talamantes*, No. CV 22-0497 DSF, 2022 WL 2903144, at *13 (C.D. Cal. May 23, 2022) ("[D]ismissal of class claims 'is the proper course to follow where the named plaintiffs have failed to state a claim in themselves for the relief they seek.'  Because Plaintiffs have failed to plausibly state any of their claims, Plaintiffs' class

allegations also fail.") (quoting *Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974)).

Plaintiffs' class allegations also fall short of the standards applicable under Federal Rule of Civil Procedure 23, in part because the putative class—all Jewish students at Chapman during the 2023-2024 school year—necessarily encompasses a wide range of relationships to Judaism.  Compl. ¶ 54.  For example, some may practice Judaism and view themselves as Zionists, others may practice Judaism and disavow Zionism, and still others may not practice Judaism at all.  *See Stand With US Ctr. for Legal Just.*, 158 F.4th at 16-18 (discussing the complex relationship between Judaism, antisemitism, and Zionism).  Such differences would require highly individualized inquiries into the environment each student faced and would defeat typicality.  There is, however, no need to reach this issue now because Plaintiffs have failed to state any individual claim.

## VI.   CONCLUSION

For the reasons above, Plaintiffs' Complaint should be dismissed.

DATED:  December 29, 2025          MUNGER, TOLLES & OLSON LLP


By:     *Bryan H. Heckenlively*
        BRYAN H. HECKENLIVELY
        Attorneys for Defendants

MOTION TO DISMISS COMPLAINT

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,921 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 29, 2025        MUNGER, TOLLES & OLSON LLP

By: _____*Bryan H. Heckenlively*_____
        BRYAN H. HECKENLIVELY
        Attorneys for Defendants